PEOPLE v STEPHAN

Docket No. 218463. Submitted October 13, 1999, at Detroit. Decided June
   20, 2000, at 9:05 A.M.
   Hanna Stephan was charged in the Oakland Circuit Court with three
      felonies. The defendant filed a notice of intent to assert an insanity
      defense. The prosecution noted that, although the Criminal Jury
      Instructions regarding the insanity defense, CJI2d 7.11, and verdicts
      of guilty but mentally ill (GBMI), CJI2d 7.12, reflect the mandates
      and requirements of their related statutes, including the burdens of
      proof with respect to proving or disproving insanity and mental ill-
      ness, when the court gives both jury instructions, as required by
      statute, the instructions contradict each other because they state
      that the defendant bears the burden of proving by a preponderance
      of the evidence mental illness and legal insanity for purposes of an
      insanity defense, but that the prosecution bears the burden of prov-
      ing lack of insanity and the defendant's mental illness beyond a rea-
      sonable doubt for purposes of a GBMI verdict. The prosecution
      noted that the statute regarding the insanity defense, MCL 768.21a;
      MSA 28.1044(1), before its amendment in 1994, had required the
      prosecution to prove beyond a reasonable doubt that the defendant
      was not legally insane. The prosecution asked the court to infer
      that the GBMI verdict statute was implicitly amended along with the
      insanity defense statute so that the two statutes are consistent in
      their allocation of proofs. with respect to the defendant's alleged
      insanity and mental illness. The court, Fred M. Mester, J., denied
      the prosecution's motion for instructions consistent with its claim
      regarding implicit amendment or partial repeal of the statute con-
      cerning the GBMI verdict. The prosecution's application for an inter-
      locutory appeal was granted.
         The Court of Appeals held :
         1. The two statutes, MCL 768.21a, 768.36; MSA 28.1044(1),
      28.1059, and their respective related Criminal Jury Instructions,
      CJI2d 7.11, 7.12, contradict each other and will create an irreconcil-
      able conflict for the jury trying to apply them. However, the doc-
      trine of separation of powers precludes the Court of Appeals from
      invading the province of the Legislature by inferring that any stat-
      ute has been implicitly amended, repealed, or partially repealed.

The Legislature alone holds the authority to correct the statutory discrepancy.

2. Both statutes are unambiguous. Both statutes are components of a common legislative scheme and should be read in pari materia, if possible. The statutes cannot be harmoniously construed. There is a glaring and unavoidable conflict between the two statutes, beyond any hope of logical resolution.

3. The task of fashioning intelligible instructions must be left to the trial courts. The Court of Appeals must defer to the Legislature to make the necessary changes.

Affirmed.

JANSEN, P.J., concurring with the findings that there is a conflict between the statutes, that the Court cannot rewrite them to avoid the conflict, and that it is up to the Legislature to amend or repeal the statutes to eliminate the conflict, dissented in part on the basis that because the defendant has died and no trial ever occurred, no effort to harmonize the statutes should be attempted by the Court of Appeals.

1. CRIMINAL LAW — CONFLICT OF LAWS — LEGAL INSANITY — GUILTY BUT MENTALLY ILL VERDICTS.

The statutes regarding the affirmative defense of legal insanity and verdicts of guilty but mentally ill contradict each other and render it impossible to fashion jury instructions that are simultaneously consistent with each other and faithful to the statutory requirements; the statutes are unambiguous, and the Legislature alone holds the authority to correct the statutory discrepancy (MCL 768.21a, 768.36; MSA 28.1044[1], 28.1059).

2. CONSTITUTIONAL LAW — SEPARATION OF POWERS — STATUTES.

The doctrine of separation of powers precludes the Court of Appeals from invading the province of the Legislature by inferring that any statute has been implicitly amended, repealed, or partially repealed (Const 1963, art 3, § 2).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David Gorcyca*, Prosecuting Attorney, *Daniel L. Lemisch*, Chief, Appellate Division, and *Anica Letica*, Assistant Prosecuting Attorney, for the people.

*John A. Basch*, for the defendant.

Amicus Curiae:

*Elwood Brown*, President, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief of Research, Training, and Appeals, for the Prosecuting Attorneys Association of Michigan.

Before: Jansen, P.J., and Saad and Gage, JJ.

Saad, J. In this prosecutor's interlocutory appeal, we consider if the Legislature's 1994 amendment of the statute governing the criminal defense of legal insanity[1] serves as an implicit amendment or partial repeal of the statute governing the "guilty but mentally ill" (GBMI) verdict[2]. Although we appreciate the prosecutor's concern that the 1994 amendment created an inconsistency between the two statutes with respect to the allocation of burdens of proof, the prosecutor's requested relief is contrary to the doctrine of the separation of powers. We therefore affirm.

I. NATURE OF THE CASE

The prosecutor asks us to correct a contradiction between the statutes governing the criminal defense of insanity and the GBMI verdict. In 1994, the Legislature amended the insanity defense statute to require criminal defendants who assert an insanity defense to prove insanity by a preponderance of the evidence. 1994 PA 56. Previously, when a defendant asserted an insanity defense, the prosecutor was required to prove beyond a reasonable doubt that the defendant

---

[1] 1994 PA 56, MCL 768.21a; MSA 28.1044(1).

[2] MCL 768.36; MSA 28.1059.

was not legally insane. However, the Legislature did not amend the GBMI statute in the same manner.[3]

The Michigan State Bar Standing Committee on Standard Criminal Jury Instructions has issued Criminal Jury Instructions for both the insanity defense statute and the GBMI verdict statute. CJI2d 7.11, 7.12. Both sets of instructions reflect the mandates and requirements of their related statutes, including the burdens of proof with respect to proving or disproving insanity and mental illness. Consequently, when a trial court gives both jury instructions, as required by statute, the instructions will state that the defendant bears the burden of proving mental illness and legal insanity for purposes of an insanity defense, but that the prosecutor bears the burden of proving lack of insanity for purposes of a GBMI verdict. Therefore, these instructions contradict each other and will create an irreconcilable conflict for the jury trying to apply them. This matter is further complicated by the requirement of the GBMI verdict statute that the *prosecutor* prove the defendant's mental illness beyond a reasonable doubt.

To correct this irreconcilable conflict between these inextricably intertwined statutes, the prosecutor asks us to infer that the Legislature implicitly repealed the portion of the GBMI verdict statute that imposes this contradictory burden on the prosecutor. The prosecutor also asks us to infer that the Legislature implicitly repealed the requirement of the GBMI verdict statute that the prosecutor prove mental illness. We agree with the prosecutor that the discrep-

---

[3] We will not speculate regarding the reasons for the Legislature's failure to amend the GBMI statute. We can only point out that there appears to be no information concerning why the Legislature did not amend both statutes.

ancies between the statutes render it impossible to
fashion jury instructions that are simultaneously con-
sistent with each other and faithful to the statutory
requirements. Also, we sympathize with the trial
courts and juries left to muddle through the paradox
these conflicting statutes create. Nonetheless, our due
regard for the doctrine of separation of powers pre-
cludes our invading the province of the Legislature by
inferring that any statute has been implicitly
amended, repealed, or partially repealed. The separa-
tion of powers doctrine, as provided by our constitu-
tion, prohibits our judicial branch from exercising
powers that properly belong to the legislative branch.
Const 1963, art 3, § 2. *Judicial Attorneys Ass'n v
Michigan*, 459 Mich 291, 296; 586 NW2d 894 (1998).
Here, in order to reconcile the GBMI verdict statute
with the insanity defense statute, we would have to
significantly revise the plain language of the GBMI ver-
dict statute by eliminating the prosecutor's eviden-
tiary burden with respect to the defendant's lack of
insanity and affliction by mental illness. We recognize
that the conflict between these two statutes creates
serious problems for trial courts, juries, prosecutors,
and defense counsel. We are unable, however, to
solve these problems because the Legislature alone
holds the authority to correct the statutory discrep-
ancy. Therefore, we defer to the Legislature to make
these necessary changes.

## II. FACTS AND PROCEEDINGS

The prosecutor charged defendant with first-degree
murder, assault with intent to murder, and two
counts of possession of a firearm during the commis-

sion of a felony.[4] Defendant filed a notice of intent to assert an insanity defense, as required by MCL 768.20a; MSA 28.1043(1).

Before trial[5], the prosecutor requested the court to instruct the jury on the correct, current burden of proof for insanity defenses and GBMI verdicts. The prosecutor pointed out the conflict between the two sets of Criminal Jury Instructions. Consistent with the 1994 statutory mandate, the Criminal Jury Instruction for the insanity defense properly imposes the burden of proof on the defendant to prove insanity by a preponderance of the evidence. MCL 768.21a; MSA 28.1044(1); CJI2d 7.11. However, the Criminal Jury Instruction for GBMI verdicts, consistent with the nonamended GBMI statute, continues to place the burden of proof on the prosecutor to show beyond a reasonable doubt that the defendant was not insane. MCL 768.36; MSA 28.1059; CJI2d 7.12.

Although these two sets of Criminal Jury Instructions, as they are currently written, are consistent with their respective related statutes, the prosecutor contended that the court should not instruct the jury that the prosecutor carries the burden of proving that the defendant was not legally insane for purposes of a GBMI conviction. By making this request, the prosecutor asked the trial court to infer that the GBMI verdict statute was implicitly amended along with the insanity defense statute, so that the two statutes are consistent in their allocation of proofs with respect to a defendant's alleged insanity and mental illness.

---

[4] Respectively, MCL 750.316, 750.83, 750.227b; MSA 28.548, 28.278, 28.424(2).

[5] Any competent trial lawyer will want to establish with certainty what the law is (and therefore what the jury will be told) before he takes positions that, in part, depend on the law.

Pointing out that MCL 768.29a; MSA 28.1052(1)
requires the court to read these instructions together,
the prosecutor contended that the instructions con-
tradict each other and that the jury would be con-
fused by the contradictory instructions on burden of
proof. In response, defense counsel averred that the
instructions were correct and unambiguous. The
court issued a written order holding:

> The court, having reviewed the arguments of the parties
> in light of the relevant Michigan law, denies the Prosecu-
> tor's Motion . . . and will read the jury instructions as
> drafted by the Michigan Supreme Court.[6] The court is satis-
> fied that if there is a contradiction between the jury instruc-
> tions and the statutes cited, it must be addressed by the
> Supreme Court.

Subsequently, this Court granted the prosecutor's
application for leave to appeal.[7]

III. ANALYSIS

A. BACKGROUND: STATUTES AND JURY INSTRUCTIONS ON THE
INSANITY DEFENSE AND THE GUILTY BUT MENTALLY ILL VERDICT

Before October 1, 1994, if a criminal defendant
raised the affirmative defense of insanity, the prose-

---

[6] The Criminal Jury Instructions are not drafted by the Supreme Court.
They are drafted by the Michigan State Bar Standing Committee on Stan-
dard Criminal Jury Instructions, which is a special committee of the State
Bar of Michigan. See 78 Mich B J 214 (February, 1999). The trial court
was presumably thinking of the Standard Jury Instructions (for civil tri-
als), which are drafted by the Standard Jury Instruction Committee
appointed by the Supreme Court and subject to an adoption procedure
under MCR 2.516(D). This will be discussed in greater detail in Subsection
III(B) of this opinion.

[7] Defendant died while his appeal was pending; hence this issue is
moot because defendant's death renders it impossible for this Court to
fashion a remedy. *People v Briseno*, 211 Mich App 11, 17; 535 NW2d 559
(1995). Nonetheless, we will review the merits of the issue because it is
one of public significance and likely to recur in the future. *Id.*

cutor was required to "produce evidence beyond a reasonable doubt that the defendant was sane at the time the crime was committed." *In re Certified Question (Duffy v Foltz)*, 425 Mich 457, 465; 390 NW2d 620 (1986). In other words, if the defendant asserted an insanity defense, the prosecutor would bear the additional burden of *disproving* insanity. Concerned that the imposition of this burden on the prosecutor created an opportunity for defendants to abuse the insanity defense, the Legislature amended the insanity defense statute effective October 1, 1994. Currently, MCL 768.21a; MSA 28.1044(1) provides:

> (1) *It is an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when he or she committed the acts constituting the offense.* An individual is legally insane if, as a result of mental illness . . . . that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law. Mental illness or being mentally retarded does not otherwise constitute a defense of legal insanity.

> &ast;   &ast;   &ast;

> (3) *The defendant has the burden of proving the defense of insanity by a preponderance of the evidence.* [Emphasis added.]

The legislative history of this amendment explains the Legislature's policy reasons for modifying the statute:

> Currently, a defendant needs to present only slight evidence of insanity, even without expert testimony, for the burden of proof to shift to the prosecutor, who then must prove beyond a reasonable doubt that the defendant was sane. Faced with this heavy burden of proof, the prosecution usually will find it necessary to present expert testi-

mony that the defendant was not insane, which can be both time-consuming and difficult. As a result, many defendants, already having been found to have perpetrated the criminal acts charged, are excused from any culpability for their behavior. By requiring a defendant to prove insanity, the bill would save the prosecution time, trouble, and expense, and make it less likely that guilty defendants would go free. Reportedly, about half the states require defendants to prove their insanity by a preponderance of the evidence; with the bill, Michigan would join them. [House Legislative Analysis, SB 202, March 3, 1994.]

After MCL 768.21a; MSA 28.1044(1) was amended to reflect the new burden of proof, the Michigan State Bar Standing Committee on Standard Criminal Jury Instructions, in turn, amended the implementing jury instruction. CJI2d 7.11 now provides:

(1) The defense of legal insanity has been raised in this case. That is an affirmative defense that the *defendant has the burden of proving by a preponderance of the evidence.* That means the *defendant must satisfy you by evidence that outweighs the evidence against it that [he/she] was legally insane when [he/she] committed the [act/acts] constituting the offense.* The law excuses a person who is legally insane at the time of a crime; but it is very important for you to remember that mental [illness/retardation] and legal insanity are not the same. A person can be mentally [ill/retarded] and still not be legally insane.

\*     \*     \*

(6) To be legally insane, a person must first be either mentally ill or mentally retarded, as I have defined those conditions. But that is not enough. To be legally insane, the person must, because of [his/her] mental illness or mental retardation, lack substantial capacity either to appreciate the nature and quality or the wrongfulness of [his/her] conduct or to conform [his/her] conduct to the requirements of the law.

(7) To decide whether the defendant was legally insane at the time of the crime, you should go through the following two steps:

(8) Step one. Are you satisfied that the defendant has established, by evidence that outweighs the evidence against it, that [he/she] was mentally [ill/retarded] at the time of the crime? Unless you are so satisfied, [he/she] was not legally insane. On the other hand, if the defendant has proved that [he/she] was mentally [ill/retarded] you must go on to the next step.

(9) Step two. Are you also satisfied that the defendant has established by evidence that outweighs the evidence against it that [he/she] lacked the substantial ability either to appreciate the nature and quality or the wrongness of [his/her] conduct or to conform [his/her] conduct to the requirements of the law [he/she] is charged with violating?

(10) If the defendant has proven both step one and step two, you must find [him/her] not guilty by reason of insanity. However, if [he/she] has failed to prove either or both steps, [his/her] claim of legal insanity fails. [Emphasis added.]

Consequently, when a defendant raises the defense of insanity, the judge instructs the jury that the defendant bears the burden of proving that defense by a preponderance of the evidence.

This appeal raises the question of how the 1994 amendment of the insanity defense statute and related change to the insanity defense jury instruction affects the GBMI verdict statute and the related GBMI jury instruction. The GBMI verdict statute allows a jury to find that a defendant is mentally ill, but not legally insane. MCL 768.36; MSA 28.1059. The verdict does not absolve a defendant of criminal responsibility; rather, it affords him psychiatric treatment. "The major purpose in creating the guilty but mentally ill verdict . . . . was to limit the number of persons who,

in the eyes of the Legislature, were *improperly* being relieved of all criminal responsibility by way of the insanity verdict." *People v Ramsey*, 422 Mich 500, 512; 375 NW2d 297 (1985) (emphasis in original). When the Legislature amended the insanity defense statute in 1994, it did not similarly amend the GBMI verdict statute. Consistent with pre-1994 law regarding the insanity defense, the GBMI verdict statute requires the prosecutor to disprove insanity. For reasons not clear to us, the GBMI verdict statute also requires the prosecutor to prove that the defendant is mentally ill. Consequently, the two statutes are currently in conflict with respect to the parties' burdens of proof.

The GBMI verdict statute provides, in pertinent part:

> (1) If the defendant asserts a defense of insanity in compliance with section 20a, the defendant may be found "guilty but mentally ill" if, after trial, the trier of fact finds all of the following *beyond a reasonable doubt*:
>
> (a) That the defendant is guilty of an offense.
>
> (b) That the *defendant was mentally ill* at the time of the commission of that offense.
>
> (c) That the *defendant was not legally insane* at the time of the commission of that offense. [Emphasis added.]

The corresponding Criminal Jury Instruction for GBMI verdicts mirrors the current statute's allocation of proofs. CJI2d 7.12 provides:

> (1) There is another verdict that is completely different from the verdict of not guilty because of insanity. This is called "guilty but mentally ill."
>
> (2) To find the defendant guilty but mentally ill, you must find the following *beyond a reasonable doubt*:
>
> (3) First, you must find that the defendant committed the crime.

(4) Second, you must find that *the defendant was mentally ill* at the time of the crime, using the definition I gave you.

(5) Third, you must find that, at the time of the crime, *the defendant was not legally insane,* using the definition I gave you. [Emphasis added.]

Thus, in contrast to the amended insanity defense statute, the GBMI verdict statute appears to impose on the prosecutor the burden of proving that the defendant was not legally insane and should not be exculpated on the basis of mental infirmity.[8] In other words, if the prosecutor fails to prove that the defendant was not legally insane, then the jury should return a verdict of "not guilty by reason of insanity," and should not return a verdict of GBMI. Consequently, the GBMI verdict statute and its implementing jury instruction clash with the amended insanity defense statute and its related instruction.

The statutes also conflict with respect to burdens of proof regarding the mental illness component of an insanity defense. Mental illness (or mental retardation) is one component of the insanity defense (i.e., the defendant must prove *both* that he is mentally ill or mentally retarded *and* that he lacked the capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law). Because the amended insanity defense statute requires the defendant to prove insanity, it logically follows that he must also prove mental illness. MCL

---

[8] Note that the statute does not explicitly state that the *prosecutor* bears the reasonable doubt burden with respect to disproving insanity. Rather, we logically infer this because the statute also discusses the burden of proving that the defendant is guilty—obviously in reference to the prosecutor's burden of proving culpability.

768.21a(1); MSA 28.1044(1)(1). However, the GBMI verdict statute also requires the prosecutor to prove mental illness beyond a reasonable doubt.[9] MCL 768.36; MSA 28.1059.

These conflicts between the statutes are further compounded by MCL 768.29a; MSA 28.1052(1), which provides that when a defendant claims insanity, the trial court must give *both* the insanity instruction and the GBMI instruction.

The prosecutor avers that we should restore the harmony between the two statutes and the jury instructions and infer that the Legislature implicitly amended the GBMI verdict statute when it amended the insanity defense statute by repealing the burden of proof allocation. The prosecutor argues that the discrepancy between the jury instructions for the two statutes is confusing and likely to undermine the statutory scheme by causing the jury to believe wrongly that the prosecutor must prove the absence of insanity. The prosecutor urges us to infer that when the Legislature amended the insanity defense statute, it implicitly repealed the contradictory portions of the GBMI verdict statute that require the prosecutor to prove defendant's sanity and mental illness beyond a reasonable doubt.

---

[9] The GBMI verdict statute's imposition of the burden of proof on the prosecutor was logical when the prosecutor was required to disprove insanity when a defendant raised the insanity defense. Before the 1994 amendment of the insanity defense statute, when a defendant claimed insanity, the prosecutor could achieve a guilty verdict only if it proved, beyond a reasonable doubt, that the defendant was not insane. Similarly, the prosecutor could achieve a GBMI verdict (rather than the exculpatory insanity verdict) only if it proved, beyond a reasonable doubt, that the defendant was not insane. However, the reason that the *prosecutor* is required to prove the defendant's mental illness in order to obtain a GBMI verdict is not clear to us.

B. STATUTORY CONSTRUCTION AND THE IN PARI MATERIA RULE

The issue concerning the conflicting statutes here arose in the context of the prosecutor's request regarding jury instructions. The trial court rejected the prosecutor's proposed jury instruction in part because it is contrary to the Criminal Jury Instruction. The prosecutor's specific request for relief here is that we disavow CJI2d 7.12 as an incorrect statement of law. The Criminal Jury Instructions are not officially sanctioned by the Supreme Court.[10] *People v Sullivan*, 231 Mich App 510, 520, n 1; 586 NW2d 578 (1998). Where a Criminal Jury Instruction does not accurately state the law, it will be disavowed by the courts. *Id.* For example, in *Sullivan*, *id.*, this Court "expressly" disavowed CJI2d 16.9(2), a manslaughter instruction, because it misstated Michigan law. *Id.* Furthermore, our Supreme Court has held that it is "error for the trial court to give an erroneous or misleading jury instruction on an essential element of the offense" including when the misleading instruction is

---

[10] The Criminal Jury Instructions are subject to different promulgation procedures than the Michigan Standard Jury Instructions for civil trials. The Standard Jury Instructions are adopted by a Supreme Court-appointed committee. This committee must comply with MCR 2.516(D)(1) in proposing modifications of, additions to, or deletions from the Standard Jury Instructions. The Michigan State Bar Standing Committee on Standard Criminal Jury Instructions publishes proposed changes for comment in the Michigan Bar Journal, although it is not subject to MCR 2.516(D)(1). 78 Mich B J 214 (February, 1999). Our court rules do not specify that trial judges utilize the Criminal Jury Instructions. See MCR 6.414(F); MCL 768.29; MSA 28.1052. Our Supreme Court "urges," but does not require, use of the Criminal Jury Instructions. Administrative Order No. 1977-1, 399 Mich lxxii (1977). See also Administrative Order No. 1978-5, 402 Mich lxxxvii (1978); *People v Anderson*, 111 Mich App 671, 677; 314 NW2d 723 (1981). In contrast, the court rules do specify that trial judges "must" give the Michigan Standard Jury Instructions when they are applicable, accurate, and requested by a party. MCR 2.516(D)(2).

taken from the Criminal Jury Instructions. *People v Petrella*, 424 Mich 221, 277; 380 NW2d 11 (1985). Our Supreme Court has also stated:

> Moreover, we remind the bench and bar once again that the Michigan Criminal Jury Instructions *do not have the official sanction of this Court.* Their use is not required, and *trial judges are encouraged to examine them carefully before using them, in order to ensure their accuracy* and appropriateness to the case at hand. [*Id.* (emphasis added).]

Additionally, in his preface to the December 1991 supplement to Michigan Criminal Jury Instructions, 2d ed., p xi, the Hon. William J. Caprathe, Chairperson of the Michigan State Bar Standing Committee on Standard Criminal Jury Instructions, stated, "These instructions are merely suggestions; their use is not mandatory, and it is expected that judges will tailor the language of the instructions to meet the facts of each particular case." Accordingly, the issue presented here is not if a trial court may deviate from the Criminal Jury Instructions, but rather how the trial court can fashion a jury instruction that accurately states the law. Therefore, to resolve the question of how the court should instruct the jury, we will approach this issue as one of statutory construction.

We begin by reviewing the essential canons of statutory construction. It is well established that the primary goal of judicial interpretation of statutes is to give effect to the intent of the Legislature. *In re Messer Trust*, 457 Mich 371, 379-380; 579 NW2d 73 (1998). When statutory language is clear and unambiguous, we must honor the legislative intent as clearly indicated in that language, without resorting to further construction. *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 538; 565 NW2d 828 (1997).

When construing a statute, the court should presume that every word has some meaning and should avoid any construction that would render the statute, or any part of it, surplusage or nugatory. *Id.*, 541-542. Statutes should be construed so as to prevent absurd results, injustice, or prejudice to the public interest. *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998).

These rules of statutory construction militate against granting the prosecutor's request. Neither statute, read by itself, is ambiguous. The insanity defense statute unambiguously imposes on the defendant the burden of proving, by a preponderance of the evidence, that he was insane when he committed the offense. The GBMI verdict statute unambiguously imposes on the prosecutor the burden of proving, beyond a reasonable doubt, that the defendant was not legally insane and that the defendant was mentally ill. However, our analysis does not end here, because our courts do not construe individual statutes in a vacuum. Instead, our courts have developed the doctrine of "in pari materia" (literally, "upon the same matter or subject"). Under this doctrine, statutes that relate to the same subject or share a common purpose are in pari materia. Such statutes must be read together as one law, even if they contain no reference to one another and were enacted on different dates. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). We will therefore consider if the in pari materia doctrine allows us to reconcile the insanity defense and GBMI verdict statutes.

The object of the in pari materia rule is to further legislative intent by finding an harmonious construction of related statutes, so that the statutes work

together compatibly to realize that legislative purpose. *Id.* Therefore, if two statutes lend themselves to a construction that avoids conflict, that construction should control. *Id.* Two statutes that form "a part of one regulatory scheme" should be read in pari materia. *In re Complaint of Southfield Against Ameritech Michigan,* 235 Mich App 523, 527; 599 NW2d 760 (1999).

Without doubt, the Legislature intended the insanity defense and GBMI verdict statutes to function jointly in furtherance of a common purpose. Indeed, these statutes are so interrelated that the criminal code requires the trial court to instruct the jury with regard to both insanity and GBMI when a defendant claims insanity. MCL 768.29a; MSA 28.1052(1). Together, these statutes establish a scheme that enables the court to account for the degree of a defendant's mental impairment in meting out justice. The insanity defense statute allows a jury to exculpate a defendant whose mental state rendered him incapable of forming the requisite mens rea to be held guilty of a crime. On the other hand, the GBMI verdict statute allows the jury to find that a defendant suffered from a mental illness that did not qualify as legal insanity. In that instance, although the defendant is not exculpated, the court is able to fashion a sentence that allows for necessary psychiatric treatment. *People v Darden,* 132 Mich App 154, 158; 346 NW2d 915 (1984). Both statutes are therefore components of a common legislative scheme and should be read in pari materia, if possible. *Complaint of Southfield, supra.*

Moreover, we find it highly significant that both the GBMI verdict statute and the 1994 amendment of the insanity defense statute were intended to *reform* the

law applicable to the insanity defense. In both instances, the Legislature was concerned that defendants who were not truly insane could too easily avail themselves of the insanity defense. House Legislative Analysis, SB 202, *supra*; *Ramsey, supra*. Both the GBMI verdict statute and the 1994 amendment of the insanity defense statute were enacted as measures to guard against this danger. Accordingly, we find that both efforts to reform the law applicable to the insanity defense serve a common purpose and should be read jointly in furtherance of that common purpose. Clearly, the insanity defense and GBMI verdict statutes should be read as in pari materia. Indeed, this Court stated in *People v Mangiapane*, 85 Mich App 379, 394; 271 NW2d 240 (1978), "We interpret these statutes to manifest an intention to bring under one procedural blanket all defenses to criminal charges that rest upon legal insanity as defined in the statute."

Mindful of the in pari materia rule, we seek to find an harmonious reading of the statutes. We cannot. There is a glaring and unavoidable conflict between the two statutes, beyond any hope of a logical resolution. The insanity defense statute provides that the defendant has the burden of proving his insanity by a preponderance of the evidence while the GBMI verdict statute provides that the prosecutor has the burden of proving a defendant's sanity beyond a reasonable doubt. The discrepancy between the burdens of proof will give rise to a potential conflict every time the trial court has to instruct the jury on both statutes. Because the trial court *must* instruct the jury on *both* statutes whenever a defendant raises an insanity defense, this conflict has the potential to occur in

*every* criminal trial where the defendant asserts insanity.[11] This potential conflict will be realized every time that the jury makes this combination of findings: (1) that the defendant has committed the offense; (2) that the defendant has proved mental illness by a preponderance of the evidence; (3) that, despite the defendant's proof of mental illness, the defendant has failed to prove insanity by a preponderance of the evidence; and (4) that the prosecutor has failed to disprove insanity and to prove mental illness beyond a reasonable doubt. When the jury makes this combination of findings, it will find itself in an impossible situation when it tries to comply with both the insanity defense and GBMI verdict instructions. Its finding that the defendant has not proved insanity by a preponderance of the evidence will preclude a verdict of not guilty by reason of insanity. However, its finding that the prosecutor failed to disprove insanity and failed to prove mental illness will preclude a verdict of GBMI. The conflict will leave the jury with two options, both unacceptable: First, it could violate the jury instructions and return a verdict finding the defendant either legally insane or GBMI. Second, it could scrupulously comply with the jury instructions, reject both the insanity and GBMI options, and return a verdict of

---

[11] Under MCL 768.29a; MSA 28.1052(1), there cannot be a trial in which the trial court instructs the jury on insanity without also instructing the jury on GBMI. Additionally, the GBMI verdict statute provides that the defendant may be found GBMI *if* the defendant asserts an insanity defense. MCL 768.36(1); MSA 28.1059(1). This precludes the possibility that a trial court might need to instruct the jury on GBMI without also instructing it on insanity. This statutory scheme forecloses the possibility that a trial court might instruct the jury on one or the other, but not both. However, the trial court may accept a plea of GBMI if the prosecutor approves and the court is satisfied that the defendant was mentally ill at the time of the offense. MCL 768.36(2); MSA 28.1059(2), MCR 6.303.

guilty—depriving the mentally ill defendant of the psychiatric treatment the GBMI statute affords. We therefore conclude that these statutes, as they are now written and implemented through MCL 768.29a; MSA 28.1052(1), cannot be harmoniously construed through any reasonable construction.

Having established the inherent conflict between the insanity defense and GBMI verdict statutes, we now consider our appropriate course of action. Because we address a question of first impression, we turn to the case law of our sister states for guidance. Interestingly, we find that the Supreme Court of Illinois faced exactly the same dilemma. *People v Fierer*, 124 Ill 2d 176; 529 NE2d 972 (1988). Like our own Legislature, the Illinois General Assembly also amended its insanity defense statute[12] to impose a preponderance of the evidence burden on the defendant, but failed to make a similar amendment of the Illinois GBMI verdict statute.[13] *Id.*, 185-186. The Illinois Supreme Court observed, as we do, the inherent dilemma for trial courts trying to fashion jury instructions and the juries trying to comply with those instructions:

> Under this scheme, a theoretical class of defendants exists who cannot be found insane and thus not guilty by reason of insanity, because they have not carried their preponderance burden, but who also may not be found GBMI because their noninsanity has not been proved by the State beyond a reasonable doubt. In other words, defendants

[12] Ill Rev Stat 1983, ch 38, pars 3-2(b), 6-2(e).

[13] Ill Rev Stat 1981, ch 38, par 115-4(j). Ill PA 86-392, § 1, amended this provision so that the GBMI verdict statute no longer requires the prosecutor to prove lack of insanity beyond a reasonable doubt. This provision took effect January 1, 1990, two years after the Illinois Supreme Court's decision.

whose sanity is a close question, the very group one would
think should be covered by the GBMI verdict, may not be
found GBMI because they fall into the gap between "prepon-
derance" and "beyond a reasonable doubt." [*Id.*, 189.]

The court acknowledged that the inconsistency
between the statutes potentially undermined the pol-
icy goal of the GBMI verdict statute: "[i]f one of the
goals of the GBMI verdict is to identify those in need of
psychiatric treatment . . . the conflicting burdens of
proof hinder, rather than advance, that objective." *Id.*,
190.

Though the Illinois Supreme Court acknowledged
that the discrepancy between the two statutes could
potentially thwart the objectives of the insanity/GBMI
statutory scheme, it abstained from finding that the
Legislature's amendment of the insanity defense stat-
ute implicitly modified the GBMI verdict statute:

Whether through inadvertence or by design, the ines-
capable fact remains that when the General Assembly
amended the insanity statute, it did not similarly amend the
GBMI statute, although it certainly could have done so. Thus,
that statute required, and continues to require, that the
State prove sanity beyond a reasonable doubt. (Ill Rev Stat
1985, ch 38, par 115-4(j).) *Among the most basic precepts
of statutory construction is that statutory terms should be
given their plain and ordinary meaning. . . . Similarly, a
court cannot read into a statute words which are not
within the plain intention of the legislature as determined
from the statute itself.* [*Id.*, 188 (emphasis added).]

Thus, the Illinois Supreme Court was unwilling to
infer any amendment of the GBMI verdict statute
absent a positive act by the General Assembly. The
court therefore left to trial courts "the task of fashion-
ing intelligible instructions . . . ." *Id.*, 191.

Despite our temptation to correct this situation by inferring that the GBMI verdict statute was "implicitly amended," we agree with the Illinois court's reluctance to find statutory amendment by implication. Like the Illinois court, and indeed the courts throughout this country, we are strongly disinclined to infer that our Legislature intended to modify or repeal a statute when it has not plainly expressed such an intent. As our Supreme Court stated:

> We will only infer the repeal of a statute in narrow circumstances, and there is a strong presumption against such a finding. *House Speaker v State Administrative Bd*, 441 Mich 547, 563; 495 NW2d 539 (1993). A repeal may be inferred: (1) when it is clear that a subsequent legislative act conflicts with a prior act, or (2) when a subsequent act of the Legislature clearly is intended to occupy the entire field covered by a prior enactment. [*Donajkowski v Alpena Power Co*, 460 Mich 243, 253; 596 NW2d 574 (1999).]

In either of these situations, the burden on the party claiming an implied repeal is a heavy one, because the intention of the Legislature to repeal a statute must be clear. *House Speaker, supra*, 563. " 'Repeals by implication are not favored and will not be indulged in if there is any other reasonable construction.' " *Id.*, 562, quoting *Attorney General ex rel Owen v Joyce*, 233 Mich 619, 621; 207 NW 863 (1926). See also *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 576-577; 548 NW2d 900 (1996).

Judicial reluctance to find repeal by implication is strong; consequently there are only rare instances in which a court has found two statutes to be so hopelessly irreconcilable that the earlier statute must be deemed implicitly repealed. Indeed, we have found only one case where the Supreme Court has found

implicit repeal. In *Old Orchard by the Bay Associates v Hamilton Mut Ins Co*, 434 Mich 244; 454 NW2d 73 (1990), our Supreme Court concluded that the 1965 amendment of MCL 600.6013; MSA 27A.6013, a statute governing the award of interest to the prevailing party in a contractual dispute, implicitly repealed MCL 438.7; MSA 19.4, a statute relating to the same subject.[14] The Court held:

> Both MCL 600.6013; MSA 27A.6013 and MCL 438.7; MSA 19.4 were enacted by the same Legislature. Given the manner of their enactment and the similar functions that the two statutes have performed for more than a century, the amendment of MCL 600.6013; MSA 27A.6013 in 1965 is highly problematic. The extension of that interest statute to prejudgment interest awards *causes two formerly compatible statutes to be in irreconcilable conflict.* Only by concluding that the § 6013 interest provision has repealed MCL 438.7; MSA 19.4 by necessary implication, insofar as civil actions are concerned, can any sense be made of the two interest statutes.
>
> While repeals by implication are not favored, it is a question of legislative intent whether or not there has been such a repeal of an earlier statute by a subsequently enacted one. . . . The latest legislative expression on the entitlement to prejudgment interest must control where two interest statutes specifically address the issue of entitlement *and*

---

[14] For a detailed discussion of the conflict between these statutes, see *Old Orchard, supra,* 253-260. Briefly stated, the amended version of MCL 600.6013; MSA 27A.6013 provided for prejudgment interest in civil actions, starting with the date the complaint was filed. *Old Orchard, supra,* 256. The nonamended statute, MCL 438.7; MSA 19.4, did not allow prejudgment interest in contract-based claims where the amount owed was to be determined by "report of referees, award of arbitrators, or by any other mode of assessment according to law." *Old Orchard, supra,* 255. Under this statute, judgment interest did not begin to accrue until the entry of the award. The Court determined that the two statutes conflicted where the plaintiff filed a civil action and the parties allowed the trial court to retain jurisdiction while the matter was resolved through arbitration. *Id.,* 253, 258.

*cannot be harmonized.* [*Old Orchard, supra,* 256-257 (emphasis added).]

The Court explained that its unusual decision was warranted under the doctrine of in pari materia:

> Normally, two statutes which share a common purpose or object are to be interpreted in pari materia. This is the appropriate rule to apply where two statutes are enacted by the same assembly with a common purpose. The rule requires that the two statutes be strictly construed so as to avoid interpreting one in a manner that defeats the main purpose of another on the same subject. . . .
>
> But where the two statutes cannot be reconciled, this rule of statutory construction does not apply. Specifically, the rule of in pari materia does not control here since it would likely result in upholding the policy embodied in MCL 438.7; MSA 19.4, the earlier statute, in a manner tending to contradict the plain language of the subsequent statute (i.e., MCL 600.6013; MSA 27A.6013). [*Id.,* 259 (citations omitted).]

Here, we are faced with a similar dilemma. When we strictly construe the GBMI verdict statute, we potentially defeat the purpose of the entire statutory scheme for determining the appropriate verdict for an insane or mentally ill defendant. We unavoidably end up with irreconcilable jury instructions that prevent the jury from reaching the correct verdict where it finds that a mentally ill defendant failed to prove insanity by a preponderance of the evidence *and* that the prosecutor failed to disprove insanity beyond a reasonable doubt. We lose the compatibility that existed between the insanity defense and GBMI verdict statutes before the amendment of the former.

On the other hand, like the Illinois Supreme Court, we lack clear authority to take action that will effec-

tively resolve the conflicts between the two statutes. The prosecutor contends that *Old Orchard* establishes a basis for finding an implicit partial repeal of the GBMI verdict statute, but we are skeptical. In *Holloway Constr Co v Oakland Co Bd of Co Rd Comm'rs*, 450 Mich 608; 543 NW2d 923 (1996), and *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488; 475 NW2d 704 (1991), the Supreme Court abrogated the scope of the *Old Orchard* decision as it applied in certain circumstances where there was no clear conflict between the statutes. *Old Orchard* as authority is therefore questionable. Furthermore, we find no clear guidance in the case.

At most, the scant authority on implicit repeal or partial repeal of statutes might allow us to resolve this conflict by finding that the 1994 amendments of the insanity defense statute implicitly repealed the burden of proof requirements of the GBMI verdict statute with respect to insanity and mental illness. However, this tidy course is not available to us because of the particular way in which the GBMI verdict statute is structured. The first subsection of the statute provides:

> If the defendant asserts a defense of insanity in compliance with section 20a, the defendant may be found "guilty but mentally ill" if, after trial, the trier of fact finds *all of the following beyond a reasonable doubt*:
>
> (a) That the defendant is guilty of an offense.
>
> (b) That the *defendant was mentally ill* at the time of the commission of that offense.
>
> (c) That the *defendant was not legally insane* at the time of the commission of that offense. [MCL 768.36(1); MSA 28.1059(1) (emphasis added).]

This paragraph requires that the prosecutor prove three matters, each beyond a reasonable doubt: (a) the defendant's guilt; (b) the defendant's mental illness; and (c) the absence of legal insanity in the defendant. (Actually, the statute does not expressly state that the *prosecutor* bears these three burdens, but we can safely assume, from the general context, that the defendant does not bear the burden of these proofs.) Because the statute places all three of these burdens under a single burden of proof umbrella, it is impossible for us to infer that the Legislature merely intended to excise a phrase, clause, or proviso from this statute. If we were to merely strike out the language "beyond a reasonable doubt" we would do far more than excuse the prosecutor from disproving insanity: we would also excuse the prosecutor from proving guilt beyond a reasonable doubt! If, on the other hand, we were to strike out paragraphs (b) and (c), we would gut the GBMI verdict of the essential requirements that the jury find that the defendant was mentally ill, but not legally insane. If we were to strike out only paragraph (c), we would still be left with the anomaly of requiring the prosecutor to prove mental illness beyond a reasonable doubt.

Because the separation of powers doctrine is central to our jurisprudence, we will not encroach on legislative prerogative by rewriting the GBMI verdict statute. If we were able to harmonize the GBMI verdict statute with the 1994 insanity defense statute amendments through the limited action of striking out particular words or phrases, we would do so. However, we cannot resolve the conflict through this limited action. We could restore harmony to the insanity/GBMI scheme only if we were to hold that the jury should

return a GBMI verdict when it finds that (a) the prosecutor proved the defendant's guilt beyond a reasonable doubt; (b) the defendant proved mental illness or mental retardation by a preponderance of the evidence; and (c) the defendant failed to prove legal insanity by a preponderance of the evidence. However, we cannot make this interpretation by simply striking out a phrase or a few words from the GBMI verdict statute. Instead, we would have to significantly revise the entire structure of the GBMI verdict statute by imposing a specific new burden of proof for each of the three elements of a GBMI verdict, contrary to the manner in which the Legislature decided to draft the statute. Our aversion to judicial intrusion into the legislative province precludes this sort of rewriting de novo of the statute.[15] We acknowledge that the discrepancy between the two statutes creates serious problems for the criminal practice bar, the trial courts, and the juries, but the solution to these problems does not lie within the limits of our authority. Instead, we must leave it to the Legislature to resolve this problem.[16]

---

[15] Contrary to the position taken by the dissent, we are not attempting to reconcile the insanity/GBMI statutes. We indicated, *supra*, 486, that "the doctrine of separation of powers precludes our invading the province of the Legislature by inferring that any statute has been implicitly amended, repealed, or partially repealed," that the "Legislature alone holds the authority to correct the statutory discrepancy," and that we defer to the Legislature to make the necessary changes. Our comment regarding harmonizing the statutes refers to nothing more than the existing statutory framework and the problems inherent in that framework. Obviously, the Legislature is free to deal with the conflict in the statutes in a variety of ways.

[16] Additionally, should the Legislature amend the GBMI verdict statute to comport with the 1994 insanity defense amendments, we anticipate that the Michigan State Bar Standing Committee on Standard Criminal Jury Instructions will facilitate this legislative action by making appropriate

Affirmed.

GAGE, J., concurred.

JANSEN, P.J. (*concurring in part and dissenting in part*). I agree with the majority that there is a conflict between the insanity defense statute, MCL 768.21a; MSA 28.1044(1), and the guilty but mentally ill (GBMI) verdict statute, MCL 768.36; MSA 28.1059, as stated by the majority. I also agree that it is up to the Legislature to amend or repeal these statutes to eliminate the conflict and that this Court cannot rewrite the statutes to avoid the conflict.[1]

However, I am concerned about the majority's conclusion that "[w]e could restore harmony to the insanity/GBMI scheme *only* if we were to hold that the jury should return a GBMI verdict when it finds that (a) the prosecutor proved the defendant's guilt beyond a reasonable doubt; (b) the defendant proved mental illness or mental retardation by a preponderance of the evidence; and (c) the defendant failed to prove legal insanity by a preponderance of the evidence." *Ante*, at 507-508 (emphasis added). I am not convinced that this is the only manner that the statutes could be har-

---

modifications of CJI2d 7.12, as it did with its prompt modifications of CJI2d 7.11.

[1] The majority statement, *ante*, at 486, that "our due regard for the doctrine of separation of powers precludes our invading the province of the Legislature by inferring that any statute has been implicitly amended, repealed, or partially repealed" is somewhat overstated. Although repeals by implication are not favored and courts should avoid finding a repeal by implication if there is any other reasonable construction, a repeal by implication may be found when the conflict between two statutes is clear, or when a subsequent law clearly intends to occupy the entire field covered by a prior enactment. *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 575-577; 548 NW2d 900 (1996). Thus, repeals by implication may be utilized in certain circumstances and it is certainly within the province of the judiciary to interpret statutes.

monized. I note that the Illinois Legislature amended its GBMI verdict statute, in light of *People v Fierer*, 124 Ill 2d 176; 529 NE2d 972 (1988), by removing only the requirement that the prosecutor prove lack of insanity beyond a reasonable doubt. Further, the Legislature could repeal either or both of the statutes if it chose to do so.

Moreover, the effect of this attempt to harmonize the statutes is to place the burden of proof on a criminal defendant with respect to part of a GBMI verdict. Because "guilty but mentally ill" is a verdict leading to a certain disposition, shifting the burden of proving mental illness, an element of the GBMI verdict, to a defendant could well be unconstitutional. *Patterson v New York*, 432 US 197; 97 S Ct 2319; 53 L Ed 2d 281 (1977); *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970).

Because the defendant has died and no trial ever occurred in this case, this opinion is essentially an "advisory" opinion, and it is within the province of the Legislature to redraft the statutes to avoid any conflict. For these reasons, I would not attempt to harmonize the statutes as the majority attempts to do and would leave to the Legislature its task of amending the statutes. For now, it is up to our able trial judges to fashion a proper jury instruction.