NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0288n.06

Case No. 14-2093

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Jun 01, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ARTHUR EUGENE SHELTON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| GREG MCQUIGGIN, Warden, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, COOK, and DONALD, Circuit Judges.

**SILER, Circuit Judge.** Petitioner Arthur Shelton appeals the district court's denial of his writ of habeas corpus filed under 28 U.S.C. § 2254. In 2004, Shelton shot and killed his roommate, Larry Hooper. At a bench trial, Shelton was found guilty but mentally ill of second-degree murder and guilty of possession of a firearm during the commission of a felony. He was sentenced to twenty-five to forty-five years' imprisonment for murder and a two-year consecutive term for the firearm-related offense. For the reasons explained below, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

At trial, Shelton admitted to killing Hooper, testifying that he saw "fire in [Hooper's] eyes" and believed that Hooper was the devil and going to kill him. In addition, both sides introduced testimony from mental health experts about Shelton's sanity at the time of the

murder. The trial court concluded that Shelton lacked premeditation and deliberation required for first-degree murder but the state had demonstrated beyond a reasonable doubt that Shelton was guilty but mentally ill[1] for the offense of second-degree murder.

Because the trial court found Shelton guilty of second-degree murder, he could have received a life sentence. However, the court imposed the sentence recommended by the prosecution of twenty-five to forty-five years' imprisonment for murder and two years for the firearm charge. Shelton objected to the sentence, inquiring as to why the state recommended a greater term of imprisonment at sentencing than its prior plea offer of seventeen to thirty years. The trial court explained that those offers are between the prosecution and defense and added that Shelton's sentence "could have easily been life without parole or [a] life sentence."

On direct appeal, Shelton raised only two issues: (1) the preponderance of the evidence demonstrated that Shelton was not guilty by reason of insanity, and (2) the finding that Shelton was mentally ill violated due process. The Michigan Court of Appeals affirmed Shelton's conviction, finding sufficient evidence in the record to conclude that Shelton was mentally ill but not legally insane and that no due process violation occurred. *People v. Shelton*, No. 268078, 2007 WL 1791704, at *5-6 (Mich. Ct. App. June 21, 2007). The Michigan Supreme Court denied Shelton's application for leave to appeal, *People v. Shelton*, 740 N.W.2d 262 (Mich. 2007) (mem.), and his motion for reconsideration, *People v. Shelton*, 744 N.W.2d 133 (Mich. 2008) (mem.).

After denial of his appeals, Shelton filed for post-conviction relief with the trial court, advancing for the first time theories of ineffective assistance of trial counsel ("IATC") and

---

[1] Under Michigan law, a trier of fact can determine that a defendant is "mentally ill," but not legally insane. Mich. Comp. Laws § 768.36. A determination that the defendant is "mentally ill" "does not absolve a defendant of criminal responsibility; rather, it affords him psychiatric treatment." *People v. Stephan*, 616 N.W.2d 188, 194 (Mich. Ct. App. 2000).

ineffective assistance of appellate counsel ("IAAC"). The trial court denied relief on the basis that Shelton "failed to make any meritorious arguments which establish that, but for any alleged errors, he would have had a reasonably likely chance of acquittal." *See* Mich. Ct. R. 6.508(D)(3)(b)(i). Shelton's application of leave to appeal to the Michigan Court of Appeals was denied, as was his application to the Michigan Supreme Court. *People v. Shelton*, 787 N.W.2d 496 (Mich. 2010) (mem.).

Having exhausted his state court options for relief, Shelton filed a pro se petition for a writ of habeas corpus with the district court. Similar to his post-conviction motion, Shelton focused his basis for relief upon IATC and IAAC. *Shelton v. McQuiggin*, No. 10-14741, 2014 WL 3827207, at *1 (E.D. Mich. July 29, 2014). The district court denied Shelton's petition but granted a certificate of appealability on one claim: whether Shelton's trial attorney was ineffective for failing to inform Shelton of a plea offer before rejecting it in violation of the Sixth Amendment.

## ANALYSIS

Before even reaching the merits of Shelton's claim for relief, the parties disagree about the proper standard of review. The parties debate whether the more deferential standard articulated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, or de novo review applies to the state court adjudications of Shelton's claims. Although the parties raise interesting arguments, we instead decide this case on the issue of procedural default.

"In order to respect the finality of state-court decisions and preserve the principles of federalism, federal courts follow the doctrine of procedural default." *Kennedy v. Mackie*, No.

14-2342, 2016 WL 232133, at \*9 (6th Cir. Jan. 19, 2016) (citing *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012)). Procedural default occurs when:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc) (quoting *Tolliver v. Sheets,* 594 F.3d 900, 928 n.11 (6th Cir. 2010)). Here, the state trial court in denying Shelton's post-conviction motion cited Michigan Court Rule 6.508(D)(3)(b)(i), which limits relief to the showing of "good cause" and "actual prejudice" for grounds that "could have been raised on appeal from the conviction and sentence or in a prior motion." Mich. Ct. R. 6.508(D)(3). A Michigan state court's reliance on Rule 6.508(D)(3) operates as a procedural bar for habeas review if "*clearly and expressly invoked.*" *Henderson v. Palmer*, 730 F.3d 554, 561 (6th Cir. 2013) (citation and internal quotation marks omitted). Shelton concedes that the state court expressly invoked Rule 6.508(D)(3).

A procedurally defaulted claim will be forfeited, unless a petitioner "demonstrates cause for the default and prejudice from the asserted error." *House v. Bell*, 547 U.S. 518, 536 (2006) (citations omitted). One method of demonstrating "cause" to excuse procedural default is by showing that petitioner's appellate counsel was ineffective. *See Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 878 (2016). Under this test, a petitioner must show (1) that his "counsel's performance was deficient" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Shelton contends that IAAC excuses his procedural default. The district court did not address the issue of procedural default, finding that the "[a]pplication of a procedural bar would not affect the outcome of this case, and

the Court deems it more efficient in this case to proceed directly to the merits." *Shelton*, 2014 WL 3827207, at \*5.

With respect to the first prong under *Strickland*, Shelton asserts that his appellate counsel raised two weak arguments on his direct appeal rather than the much stronger IATC claim. Although effective appellate representation does not require that all nonfrivolous arguments be made, appellate counsel must "exercise reasonable professional judgment." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (citation omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Sanders v. Curtin*, 529 F. App'x 506, 521 (6th Cir. 2013) (quoting *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)). Moreover, not only must the issue omitted be significant, but it must also be "obvious." *McFarland v. Yukins*, 356 F.3d 688, 711 (6th Cir. 2004) (listing factors relevant to determining whether appellate counsel was ineffective).

Although Shelton's IATC claim may have been significant, we find that it was not obvious. It is important to note at the outset that Shelton's appellate counsel's performance should "not be reviewed with hindsight, but judged 'within the context of the circumstances at the time of the alleged errors.'" *Hicks v. United States*, 122 F. App'x 253, 258 (6th Cir. 2005) (quoting *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996)). At the time of Shelton's appeal, his appellate counsel had only the following colloquy between the trial court and Shelton to even suggest the existence of a plea offer:

> [Shelton]: The original offer was 17 to 30 . . . . If their original offer was 17 to 30, why would they go way higher?
>
> [The Court]: Plus two for the firearm.
>
> [Shelton]: . . . . Well, it was 15 to 30, plus two more for the firearm, 17 to 30. That was their offer to begin with.

> [The Court]: Well, Mr. Schwartz, I do know this. I don't participate in the offers. That's between the prosecutor's office and the defense attorney. The parties will sometimes come and approach me and ask me whether I'd be inclined to give a Cobbs' evaluation in terms of the sentence.
>
> You can talk to Mr. Schwartz. You made the decision you made and that was their offer. And I heard the trial, I heard things that weren't presented to me, et cetera, and again this could have easily been life without parole or life sentence, Mr. Shelton, in light of the heinous nature of the crime.

While this is enough to have alerted Shelton's appellate counsel to the existence of an offer, there is, of course, a significant difference between knowing about the existence of a plea offer and having some reason to think that the offer was not communicated to Shelton. Simply put, there was little to give Shelton's appellate counsel pause, considering that the trial court's statement seems to imply that Shelton made the decision not to accept the plea offer and Shelton never made any attempt to refute that claim. Indeed, Shelton's apparent knowledge of the terms of the offer would have suggested to appellate counsel that the plea offer *had* been communicated.

In a supplemental authority filed with this court, Shelton reminds us that *Strickland* imposes a duty on a defendant's counsel to investigate potential claims. *See Strickland*, 466 U.S. at 688. True enough, but Shelton has given us nothing to suggest that his appellate counsel had any reasons to investigate his IATC claim. In fact, the only evidence that supports Shelton's contention that his counsel failed to communicate the plea offer to him—the affidavits filed by Shelton and his sister—were produced *after* Shelton's direct appeal. Further, Shelton has not claimed that he told his appellate counsel about his trial counsel's failure to communicate a plea offer to him, despite the fact that Shelton acknowledged in his motion for post-conviction relief that he met with his appellate counsel. Without any knowledge of the alleged violation or any

clue to suggest that he investigate the claim, Shelton's appellate counsel could not have provided ineffective assistance.

Shelton's supplemental authority also suggests that he is entitled to an evidentiary hearing. Presumably, this request is made with respect to his IAAC claim. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). The problem with granting Shelton an evidentiary hearing on this issue is simple: he has not made any allegations that his appellate counsel knew or should have known about the facts underlying his IATC claim.[2] Rather, the most pointed statement Shelton has made on this issue thus far has been the suggestion that his "trial counsel's file may have confirmed for appellate counsel the offer's unilateral rejection." But this allegation is pure speculation, was not made under oath, and therefore does not meet the standard by which to grant an evidentiary hearing. For that reason, no evidentiary hearing is warranted.

## CONCLUSION

Petitioner is unable to excuse his procedurally defaulted ineffective assistance of trial counsel claim and has not demonstrated a sufficient basis to remand for an evidentiary hearing.

**AFFIRMED.**

---

[2] We contrast this case with the facts of *McClellan v. Rapelje*, No. 2:08-CV-10735, 2011 WL 2447999 (E.D. Mich. June 14, 2011), *aff'd*, 703 F.3d 344 (6th Cir. 2013). Similar to Shelton, the petitioner in *McClellan* sought an evidentiary hearing regarding his IAAC claim in order to excuse the procedural default of his IATC claim. *McClellan*, 2011 WL 2447999, at *7. Unlike Shelton though, the petitioner provided a factual basis—specifically, two letters sent to the petitioner's appellate counsel requesting that counsel investigate the IATC claim—to justify an evidentiary hearing on his IAAC claim *prior* to the district court's ruling on whether to grant a hearing. Op. and Order Granting Evidentiary Hearing at 9-10, *McClellan*, 2011 WL 2447999. Because of those letters, the district court had a sufficient basis in order to grant an evidentiary hearing to determine whether the petitioner's appellate counsel made a strategic decision in not raising the IATC claim on direct appeal or just failed to adequately investigate the claim. *Id*. at 11.

**BERNICE BOUIE DONALD, Circuit Judge, dissenting.**

The majority acknowledges that ineffective assistance of appellate counsel can excuse a procedural default. It accepts that failure to convey a plea bargain offer in these circumstances would constitute ineffective assistance of trial counsel. It even admits that Shelton's claim of ineffective assistance of trial counsel "may have been significant." (Slip op. 5). Yet the majority refuses even to grant Shelton an evidentiary hearing to explore his troubling accusations because, in its view, he "has not made any allegations that his appellate counsel knew or should have known about the facts underlying" his ineffective assistance of trial counsel claim (Slip op. 7). Since the record indicates otherwise, I must respectfully dissent.

Taken as a whole, the record does contain an allegation that Shelton's appellate counsel could have known that his trial counsel withheld the plea offer. The majority itself cites the plea colloquy in state court and acknowledges that the transcript should have put appellate counsel on notice that there was a plea offer (Slip op. 6). In a supplemental filing, Shelton argues that investigating "trial counsel's file may have confirmed for appellate counsel the offer's unilateral rejection." (Appellate R. 37 at 2).

Without citation to authority, the majority claims that this allegation fails to meet the standard for granting an evidentiary hearing because it was based on pure speculation and not made under oath. (Slip op. 8). However, under the Supreme Court's standard for granting an evidentiary hearing the majority cited merely sentences earlier in the opinion, (Slip op. 7); *Schriro*, 550 U.S. at 474, Shelton qualifies. *Schriro* held that an evidentiary hearing is appropriate when the hearing would allow a petitioner to prove his factual allegations true, and those allegations would entitle him to habeas relief. *Schriro*, 550 U.S. at 474. At no point does *Schriro* say that the allegations must have been made under oath, or that they cannot be based on

speculation. If Shelton's trial counsel in fact withheld a plea deal, he received ineffective assistance of trial counsel. If conducting a reasonable investigation would have informed appellate counsel about a unilateral plea rejection, but he did not conduct such an investigation, Shelton received ineffective assistance of appellate counsel that would excuse a procedural default. Therefore, if Shelton's allegations are true, he would be entitled to habeas relief.

Ultimately, there is so much we do not know. Since *Schriro* poses no bar, the wisest course would be to conduct an evidentiary hearing. That way, the district court could further develop the factual record to solicit testimony from appellate counsel, trial counsel, and other witnesses. This would allow us to know with greater certainty what appellate counsel knew or did not know, and what really transpired regarding the plea offer. Since today's ruling forecloses even exploring what I consider to be a plausible habeas claim, I respectfully dissent.