*In re* COMPLAINT OF CITY OF SOUTHFIELD AGAINST AMERITECH
MICHIGAN

Docket No. 207191. Submitted January 12, 1999, at Lansing. Decided May
14, 1999, at 9:10 A.M.

The city of Southfield filed a complaint against Ameritech Michigan in
the Public Service Commission regarding problems with the auto-
matic location identification and automatic number identification
features of the emergency 911 service provided by Ameritech to
Southfield customers of basic local exchange service carrier TCG
Detroit. A hearing was held by a PSC referee, who allowed the
Attorney General and TCG Detroit to intervene. The PSC issued an
opinion and order directing Ameritech to improve its 911 database,
or be subject to fines and penalties, and to pay the attorney fees
incurred by Southfield in connection with the proceedings in the
PSC. Ameritech appealed.

The Court of Appeals *held*:

1. The Michigan Telecommunications Act (MTA), MCL 484.2101 *et
seq.*; MSA 22.1469(101) *et seq.*, empowers the PSC to issue the order
requiring Ameritech to improve its 911 database. Subsection 202(c)
of the MTA, MCL 484.2202(c); MSA 22.1469(202)(c), authorizes the
PSC to issue orders to establish and enforce quality standards for
providing telecommunications services in this state. Subsection
102(dd) of the MTA, MCL 484.2102(dd); MSA 22.1469(102)(dd),
defines "telecommunications services" to include regulated and
unregulated services offered to customers for the transmission of
two-way interactive communication and associated usage. Emer-
gency 911 service is a telecommunication service that is subject to
regulation under the MTA and to additional regulation under the
Emergency Telephone Service Enabling Act (ETSEA), MCL 484.1101
*et seq.*; MSA 22.1467(101) *et seq.* Subsection 205(1) of the MTA, MCL
484.2205(1); MSA 22.1469(205)(1), empowers the PSC to investigate
and resolve complaints under the MTA. Subsection 205(2) of the
MTA, MCL 484.2205(2); MSA 22.1469(205)(2) empowers the PSC to
require changes in how telecommunications services are provided
if the quality, availability, or condition of a regulated service vio-
lates the MTA or is adverse to the public interest.

2. The MTA provides no authority for the PSC to order Ameritech to pay Southfield's attorney fees. Section 601 of the MTA, MCL 484.2601; MSA 22.1469(601), which empowers the PSC to make whole ratepayers and other persons who have suffered an economic loss, is insufficient to confer authority to award attorney fees to a prevailing party. Where, as in Michigan, the American Rule regarding attorney fees prevails, "economic loss" does not include attorney fees. Furthermore, express provision in the MTA for attorney fees if an opposing party's position is frivolous, subsection 209(1), MCL 484.2209(1); MSA 22.1469(209)(1), indicates that the Legislature would have expressly provided for attorney fee awards in cases like this one had it been the Legislature's intent to do so. The award of attorney fees in this case must be reversed in the absence of statutory authority for such an award.

Affirmed in part and reversed in part.

TELECOMMUNICATIONS — MICHIGAN TELECOMMUNICATIONS ACT — EMERGENCY 911 SERVICE — PUBLIC SERVICE COMMISSION

The Michigan Telecommunications Act empowers the Public Service Commission to order a telecommunications provider to make improvements in its emergency 911 service and empowers the commission to investigate and resolve complaints about such service (MCL 484.2202[c], 484.2205; MSA 22.1469[202][c], 22.1469[205]).

*Varnum, Riddering, Schmidt & Howlett LLP* (by *Peter Armstrong*), for city of Southfield.

*Honigman Miller Schwartz and Cohn* (by *Daniel J. Demlow* and *Richard J. Aaron*) and *Michael A. Holmes,* for Ameritech Michigan.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *J. Peter Lark* and *Orjiakor N. Isiogu,* Assistant Attorneys General, for the Attorney General.

*Don L. Keskey* and *David M. Gadaleto,* Assistant Attorneys General, for the Public Service Commission.

Before: GRIFFIN, P.J., and McDONALD and WHITE, JJ.

PER CURIAM. Ameritech Michigan appeals as of right the September 30, 1997, opinion and order of the Public Service Commission requiring Ameritech to improve its 911 database and to pay the attorney fees of the city of Southfield incurred in this administrative proceeding. We affirm in all substantive respects, but we reverse the award of attorney fees.

The city of Southfield is a member municipality in the Oakland County Emergency Telephone District (ETD), MCL 484.1102(f); MSA 22.1467(102)(f). The Oakland County ETD utilizes universal emergency number service or 911 service, subsections 102(y) and (z). Southfield also provides one of several primary public safety answering points for the Oakland County Emergency Telephone System, subsection 102(m). The system utilizes both automatic location identification (ALI) and automatic number identification (ANI), subsections 102(a) and (b).

On several occasions, Southfield experienced problems with the ANI and ALI features of the emergency system. After its repeated efforts to remedy the problem were ignored, the city complained to the PSC, which instituted contested case proceedings.

After a hearing, the PSC found that serious problems were documented and that Southfield had made repeated efforts to obtain a solution to database problems over a nearly two-year period. Ameritech had given only belated and unsatisfactory responses. Ameritech did not follow through on written commitments to remedy the problems.

The PSC noted that the ALI feature is indispensable in a variety of circumstances. The PSC rejected Ameritech's contention that database problems that inhibit the proper functioning of the ALI and ANI features

could await remediation because no serious harm has yet resulted.

Ameritech argued that the database errors reflect principally the service addresses of telephones for which basic service is provided by a competing local exchange carrier. The PSC, however, found that the problem originates with Ameritech, which has a statutory obligation to allow access to its databases to other providers. MCL 484.2363; MSA 22.1469(363). The PSC noted that only Ameritech has access to the database and concluded that if a database does not accurately reflect the data provided by others, only Ameritech can be held responsible.

The PSC ordered Ameritech to verify its Michigan database within thirty days. It held that Ameritech would be subject to fines and penalties if it failed to correct problems within one business day.

Finally, the PSC held that, pursuant to the mandate of § 601 of the Michigan Telecommunications Act (MTA), MCL 484.2601; MSA 22.1469(601), to make whole ratepayers and other persons who have suffered an economic loss as a result of violation of any provision of the MTA, Ameritech may be required to pay the city of Southfield's attorney fees incurred during the contested case proceedings.

On appeal, Ameritech argues that the regulation imposed and the penalties invoked by the PSC under the MTA are erroneous, because such regulation and penalties are unavailable under the Emergency Telephone Service Enabling Act (ETSEA), MCL 484.1101 *et seq.*; MSA 22.1467(101) *et seq.*, a specific statute regulating 911 service that controls over the more general MTA. The PSC has only such authority as is plainly granted by the Legislature. The enabling statutes are

strictly construed and the administrative authority drawn therefrom must be granted plainly, because doubtful power does not exist. *In re Procedures & Format for Filing Tariffs under the Michigan Telecommunications Act*, 210 Mich App 533, 539; 534 NW2d 194 (1995).

Shortly after the adoption of the MTA, by 1992 PA 37, the Legislature amended the PSC's basic jurisdictional statute, MCL 460.6; MSA 22.13(6), eliminating, inter alia, references to utilities providing telephone services. Accordingly, this Court is now writing on a clean slate with regard to the extent of the PSC's jurisdiction over telephone services under the MTA and the ETSEA.

The MTA and the ETSEA both deal generally with regulation of telecommunications services. Although not simultaneously enacted, these two statutes are subject to the general rule that enactments on the same subject, forming a part of one regulatory scheme, are construed so that the later statute is supplementary to the preceding one. *Valentine v Redford Twp Supervisor*, 371 Mich 138; 123 NW2d 227 (1963). Thus, earlier and later statutes concerning the same subject matter, where possible, are construed together as in pari materia, unless there is such repugnancy that both cannot operate, in which event the last expression of legislative will must control, and the earlier statute is deemed repealed by implication. *Jackson v Michigan Corrections Comm*, 313 Mich 352; 21 NW2d 159 (1946).

Here, the ETSEA is the earlier adopted statute, 1986 PA 32. The MTA, 1991 PA 179, became effective January 1, 1992.

It is true that the ETSEA specifically regulates 911 services. But nothing in that statute purports to immunize Ameritech Michigan from the type of regulation that the PSC has imposed in this case.

Section 602 of the ETSEA, MCL 484.1602; MSA 22.1467(602), grants the PSC jurisdiction to conduct a contested case proceeding "between or among one or more service suppliers, counties, public agencies, public service agencies, or any combination of those entities regarding their respective rights and duties under this act." Although emergency telephone systems are created by municipal action, the ETSEA provides that the costs of establishing and maintaining such systems are paid directly by each billed service user, ETSEA § 402, MCL 484.1402; MSA 22.1467(402), and collection of such charges is the sole responsibility of the telephone company ("service supplier") and not the municipal agencies that established the system. ETSEA § 403, MCL 484.1403; MSA 22.1467(403).

Section 201 of the ETSEA provides:

> A universal emergency number service system shall not be implemented pursuant to this act unless a tariff exists for each service supplier designated by the final 9-1-1 service plan to provide 9-1-1 service in the universal emergency number system. [MCL 484.1201; MSA 484.1201.]

"Tariff" is defined in ETSEA subsection 102(v), MCL 484.1102(v); MSA 22.1467(102)(v), as "the rate approved by the public service commission for 9-1-1 service provided by a particular service supplier."

Thus, the ETSEA contemplates PSC approval of emergency telephone service rates, and emergency telephone service is therefore a "regulated" form of telecommunications service. In contrast, the MTA provides

for the filing of optional tariffs containing for "unregulated" services:

> (1) A provider of an unregulated service may file with the commission a tariff which shall contain the information the provider determines to be appropriate regarding the offered service.
>
> (2) The commission shall retain a tariff filed under this section and make all information contained in the tariff available to the public. [MCL 484.2402; MSA 22.1469(402).]

Section 604 of the ETSEA, MCL 484.1604; MSA 22.1467(604), limits the tort liability of the service supplier and its officers, agents, or employees, unless such act or omission amounts to gross negligence or wilful and wanton misconduct. Ameritech's reliance on this provision as exempting it from the type of regulation imposed by the PSC in this case is without merit. Southfield is not choosing to sue for damages in tort, but rather seeking regulation of the quality of service, adjudication of the right of the city of Southfield to receive a better quality of service and the duty of Ameritech to provide it pursuant to § 602.

The MTA was amended by 1995 PA 216 to reflect, inter alia, that the amendment of MCL 460.6; MSA 22.13(6) by 1992 PA 37 was intended by the Legislature to eliminate, except as otherwise provided by the MTA or the ETSEA, the power of the PSC to regulate telecommunications. Subsection 102(dd) of the MTA, MCL 484.2102(dd); MSA 22.1469(102)(dd), as amended, provides that "telecommunications services" includes both regulated and unregulated services offered to customers for the transmission of two-way interactive communication and associated usage. The statute specifically provides that a "telecommunications service is not a public utility service."

The MTA authorizes the PSC to exercise jurisdiction and authority to administer the MTA and, in administering the act, limits the PSC to the powers and duties prescribed by the MTA. Subsections 201(1) and (2), MCL 484.2201(1),  (2); MSA 22.1469(201)(1), (2). Hence, the Court need not look outside the four corners of the MTA or the ETSEA to determine the PSC's powers with respect to the telecommunications services at issue in this matter.

Section 202 of the MTA, MCL 484.2202;   MSA 22.1469(202), provides, in subparagraph c, that the PSC may promulgate rules and issue orders to establish and enforce quality standards for providing telecommunication services in this state. The PSC is also required to study and report to the Legislature and the Governor "on the following matters that have impact on the basic local exchange calling activities of all residential customers in the state: . . . (iii) the ability of customers to contact emergency services . . . without a toll call."

Subsection 205(2) of the MTA provides:

> If the commission finds, after notice and hearing, that the quality, general availability, or conditions for the regulated service violate this act or an order of the commission under this act, or is adverse to the public interest, the commission may require changes in how the telecommunication services are provided. The commission's authority includes, but is not limited to, the revocation of a license and issuing cease and desist orders. [MCL 484.2205(2); MSA 22.1469(205)(2).]

Subsection 205(1), MCL 484.2205(1);   MSA 22.1469(205)(1), empowers the PSC to "investigate and resolve complaints under this act." The reference to "this act" limits such investigative powers to the MTA;

however, as already noted, there is an equivalent provision under the ETSEA.

Ameritech relies on subsection 401(1) of the MTA, MCL 484.2401(1); MSA 22.1469(401)(1), which provides that except as otherwise provided by law or preempted by federal law, the PSC shall not have authority over "enhanced services." Ameritech contends that it is providing, in this case, enhanced 911 service, and therefore that the MTA precludes the exercise of the PSC's jurisdiction, except as otherwise provided by the ETSEA.

That is an erroneous construction of the statute. The statute goes on to specify what is legislatively understood to be an enhanced service, including "paging, cellular, mobile, and answering services, video, cable service, pay-per-view, shared tenant, private networks, financial services networks, radio and television, WATS, personal communication networks, municipally owned telecommunication system, 800 prefix services, burglar and fire alarm services, energy management services, and the reselling of an unlicensed telecommunications service."

That 911 services are not considered "enhanced services" or otherwise any form of "unregulated service" is made clear by § 403 of the MTA, which provides:

> A provider of unregulated telecommunications services shall not at any time refuse, charge, delay, or impair the speed of the connecting of a person to a telecommunication emergency service. [MCL 484.2403; MSA 22.1469(403).]

The phrasing of the statute is inconsistent with any contention that emergency telephone service is unregulated.

Therefore, the MTA is consistent with the ETSEA, and the two statutes are properly harmonized by recognizing that emergency telephone service is simply subject to additional specific legislative control under the ETSEA as compared with other forms of regulated telecommunications services. The MTA therefore empowers the PSC to restructure its regulations to focus, inter alia, on quality of service with respect to emergency telephone service, a regulated service, and to improve the delivery of such an essential service. MTA subsections 101(2)(c) and (e) and 205(2), MCL 484.2101(c), (e), 484.2205(2); MSA 22.1469(101)(2)(c), (e), 22.1469(205)(2).

Moreover, the particular regulation imposed by the PSC in this case is authorized by the MTA. The PSC has provided that if Ameritech does not address errors in its database, so as to render properly functional the ANI and ALI features of the service, for which it is charging ratepayers, Ameritech will be subject to the penalties provided in subsection 601(a) of the MTA, MCL 484.2601(a); MSA 22.1469(601)(a). That subsection specifically authorizes a $1,000 fine for each incident, up to $20,000 a day, for violations of the act, with the doubling of such fines and daily maximum for subsequent offenses.

The PSC determined that, as a practical matter, Ameritech completely controls the database. Ameritech generated the customer information used by TCG Detroit, but was also found to have been dilatory and negligent in terms of accurately incorporating information supplied by TCG Detroit. Ameritech also denied TCG Detroit access to its database that it was required to facilitate pursuant to § 363 of the MTA, MCL 484.2363; MSA 22.1469(363). Having monopo-

lized access to its database, Ameritech is properly and reasonably held responsible by the PSC for timely addressing problems and errors in that database.

It is also reasonable for the PSC to be concerned about such errors, even if, to date, no provable harm has resulted. This Court could properly take judicial notice, MRE 201(b), (c), and (e), that delays in the responses of a fire department, police agency, or emergency medical services provider could result in serious injury or death to persons and damage to property. In those situations when the caller to 911 is unable to identify the address or, by virtue of illness, injury, or threat to personal safety precluded from taking advantage of the possibility of voice communication, the ANI and ALI features of the system are crucial to the fulfillment of the underlying public purpose. The PSC therefore acted properly in taking steps to assure that database errors, which rendered the ANI and ALI features of the system useless, and which have gone uncorrected for more than two years, will now be properly addressed. Ameritech need be concerned with potential penalties and other liabilities only with respect to matters under its control; if and when the PSC should impose a penalty on Ameritech for matters beyond its control, an appellate remedy will exist to correct any such impropriety.

Finally, whether the PSC has authority to award attorney fees is a question of law, subject to judicial determination de novo.

As the PSC notes, § 601 of the MTA, MCL 484.2601; MSA 22.1469(601), empowers it to make whole ratepayers and other persons who have suffered an economic loss. This language is not sufficient to confer authority to award attorney fees to a prevailing party.

The term "economic loss" is a legal term that has acquired a peculiar and specific meaning in the law, and it is to be so interpreted when the statute is construed. MCL 8.3a; MSA 2.212(1). "Economic loss" has acquired that meaning in the interpretation and application of the Uniform Commercial Code. *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512; 486 NW2d 612 (1992). Where, as in Michigan, *State Farm Mut Automobile Ins Co v Allen*, 50 Mich App 71, 74; 212 NW2d 821 (1973), the American Rule prevails, "economic loss" does not include attorney fees. *Myrtle Beach Pipeline Corp v Emerson Electric Co*, 843 F Supp 1027; 23 UCC Rep Serv 2d 683 (SC, 1993).

Furthermore, Michigan jurisprudence otherwise precludes such an expansive interpretation of statutory language with reference to the issue of attorney fees. Attorney fees may not be awarded in Michigan unless expressly authorized by statute or court rule. Here, when the Legislature wanted to authorize an award of attorney fees in the MTA, it did so explicitly. Subsection 209(1), MCL 484.2209(1); MSA 22.1469(209)(1), authorizes the PSC to award to the prevailing party its costs, "including reasonable attorney fees," if the opposing party's position was frivolous. The present statute and situation are therefore indistinguishable from *In re 1987-88 Medical Doctor Provider Class Plan*, 203 Mich App 707, 732; 514 NW2d 471 (1994), where this Court concluded that, notwithstanding compelling reasons of public policy for authorizing such attorney fee awards, the agency had exceeded its authority in awarding attorney fees without express statutory authorization. The fact that the Legislature had authorized attorney fee awards in situations where a party took a frivolous position was

held to evidence that the lack of other provisions for attorney fee awards was not inadvertent. There is no basis for applying *In re Attorney Fees of Kelman, Loria, Downing, Schneider & Simpson,* 406 Mich 497, 503; 280 NW2d 457 (1979), to the facts of this case where no common fund was created by the actions of Southfield's city attorney.

The decision of the PSC with respect to attorney fees is reversed; in all other respects, the order of the PSC is affirmed. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.