*In re* COMPLAINT OF PELLAND AGAINST AMERITECH MICHIGAN
*In re* APPLICATION OF AMERITECH MICHIGAN FOR APPROVAL OF
PROCEDURES FOR THE PREVENTION OF IDENTITY THEFT

Docket Nos. 230540, 232820. Submitted August 7, 2002, at Lansing.
Decided January 10, 2003, at 9:00 A.M. Leave to appeal sought.

Patricia Pelland discovered in a credit report that Ameritech Michigan
had reported to a credit-reporting agency that she had an unpaid
debt to Ameritech Michigan. Pelland contacted Ameritech and
learned that someone had ordered, but not paid for, telephone ser-
vice in her name. Ameritech sent a letter to Pelland indicating that
her name would be removed from the unpaid account and sug-
gesting that her credit report would be corrected. When Pelland's
credit report remained uncorrected after several months, Pelland
filed a complaint against Ameritech with the Public Service Com-
mission, alleging that Ameritech violated § 502 of the Michigan
Telecommunications Act (MTA), MCL 484.2502, by misrepresenting
rates, terms, or conditions of telecommunications service and by
charging an end-user for a subscribed service that the end-user did
not order. The PSC found Ameritech in violation of the act, as
alleged by Pelland, and ordered Ameritech to pay restitution to Pel-
land, to pay a fine to the state, and to file an application with the
PSC for approval of Ameritech procedures to protect its customers
from identity theft and ensure the removal of negative information
in a customer's credit report when such information was provided
by Ameritech as a result of identity theft. Ameritech submitted an
application under protest, and the PSC approved the application.
Ameritech filed an appeal of the PSC decision regarding Pelland's
complaint and an appeal of the PSC decision approving Ameritech's
application. The appeals were consolidated.

The Court of Appeals *held*:

1. The PSC did not lack subject-matter jurisdiction over the com-
plaint filed by Pelland. The complaint alleged violations of subsec-
tions 502(a) and (b) of the MTA. The PSC was authorized by the MTA
to determine if Ameritech's actions violated the MTA.

2. Subsection 502(a) of the MTA provides that a provider of a tele-
communications service shall not make a false, misleading, or
deceptive statement or representation regarding rates, terms, or

conditions of providing service. The PSC erred in finding that Ameritech violated subsection 502(a). The only evidence supporting a finding of misrepresentation was the fact that the Ameritech account remained on Pelland's credit report months after she contacted Ameritech. The Fair Credit Reporting Act, 15 USC 1681 *et seq.*, which regulates creditors' reports to credit-reporting agencies, requires a creditor to provide correct information to a credit-reporting agency once a debtor reports an error in a credit report, but does not require the creditor to ensure that the incorrect information is removed from the credit report. Federal law thus precludes the PSC from imposing requirements or prohibitions on a creditor that furnishes information to a credit-reporting agency, and from sanctioning Ameritech for its report of Pelland's account to the credit-reporting agency or its response to Pelland's notice of error. The PSC's finding that Ameritech made a false, misleading, or deceptive representation that it would do all that was necessary to have the fraudulent account cleared from Pelland's credit report is not supported by competent, material, or substantial evidence on the record. The uncorrected credit report, by itself, could not support a finding of misrepresentation by Ameritech.

3. Subsection 502(b) of the MTA provides that a provider of a telecommunications service shall not charge an end-user for a subscribed service that the end-user did not order. Subsection 505(3)(a), MCL 484.2504(3)(a), defines "end user" as the retail subscriber of a telecommunications service. The PSC erroneously found that Ameritech charged Pelland as an end-user for a subscribed service that she did not order. Pelland was not the retail subscriber of the service nor was she the end-user.

4. The PSC exceeded its authority in ordering Ameritech to develop procedures to verify the identity of persons ordering service, ensure that accounts referred to collection agencies and credit-reporting agencies are attributed to the responsible parties, retain records, remove incorrect negative information from customers' credit reports, and timely respond to complaints regarding fraudulent accounts and identity thefts. 15 USC 1681t(b)(1)(F) precludes the PSC from ordering Ameritech to institute procedures to ensure that accounts referred to collection agencies and credit-reporting agencies are attributed to the responsible parties and develop procedures to remove negative information from customers' credit reports when accounts are found fraudulent. MTA provisions that empower the PSC to establish and enforce quality standards for providing telecommunications services, MCL 484.2202, to investigate and resolve complaints and order changes if the quality, general availability, or conditions for the regulated service violate

the MTA or a PSC order, or are adverse to the public interest, MCL 484.2205, and to impose penalties, MCL 484.2601, do not give the PSC authority to order Ameritech to adopt procedures for verifying the identity of persons ordering service, for record retention, and for timely response to complaints regarding fraudulent accounts or identity thefts.

Reversed.

TELECOMMUNICATIONS — TELECOMMUNICATIONS SERVICE PROVIDERS — CREDIT REPORTS — IDENTITY THEFT — PUBLIC SERVICE COMMISSION.

The Public Service Commission lacks authority to order a telecommunications services provider to implement procedures for verifying the identities of person's ordering service, ensuring that accounts referred to collection agencies and credit-reporting agencies are attributed to the responsible parties, retaining records, removing incorrect negative information from customers' credit reports, and timely responding to complaints regarding fraudulent accounts and identity thefts (15 USC 1681t[b][1][F]; MCL 484.2202, 484.2205, 484.2601).

*Honigman Miller Schwartz and Cohn LLP* (by *Daniel J. Demlow* and *Ruth E. Zimmerman*), *Craig A. Anderson* and *Steven L. Berenbaum* for Ameritech Michigan.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *David A. Voges* and *Michael A. Nickerson*, Assistant Attorneys General, for the Public Service Commission.

Before: KELLY, P.J. and SAAD and SMOLENSKI, JJ.

KELLY, P.J. These consolidated appeals concern the power of the Public Service Commission (PSC) to sanction telecommunications providers in credit reporting matters and require them to adopt procedures to protect customers against identity theft and respond to complaints regarding related credit reporting issues. In Docket No. 230540, Ameritech Michigan appeals as of right a PSC opinion and order finding it in violation of subsections 502(a) and 502(b) of the

Michigan Telecommunications Act (MTA), MCL 484.2101 *et seq.*[1] The PSC ordered Ameritech to (1) pay restitution to the complainant, (2) pay fines to the state, (3) apply to the PSC for approval of procedures to better protect its customers from identity theft, and (4) ensure the removal of negative credit information from the complainant's credit reports. In Docket No. 232820, Ameritech appeals as of right an order approving Ameritech's procedures and ordering that they remain in effect until further order. We reverse.

I. BASIC FACTS AND PROCEDURAL BACKGROUND

A. DOCKET NO. 230540

In 1996, Patricia Pelland discovered that someone had fraudulently opened an account in her name for telephone service. Pelland suspected that her former husband had given her social security number and other personal information to a friend, who used the information to fraudulently open accounts. When Pelland contacted Ameritech, an agent informed her that the service would be cancelled and the account turned over to the fraud department. Pelland never received a bill for the service.

In 1999, after being rejected for credit, Pelland discovered a large number of fraudulent accounts on her credit report. Included among them was a debt to Ameritech for $1,022. Pelland sent Ameritech a letter disputing the debt. In response, she received a June

---

[1] The MTA is repealed effective December 31, 2005. MCL 484.2604, as amended by 2000 PA 295, effective July 17, 2000. Before this amendment, the act had been set to be repealed on January 1, 2001.

11, 1999, letter indicating that Ameritech had removed Pelland's name from the account and that it would take up to ninety days to clear up the matter. Ameritech's collection agency, Risk Management Alternatives, Inc., also wrote to Pelland on June 15, 1999, stating that the account had been returned to Ameritech and Risk Management would remove any information it placed on Pelland's credit report. Pelland did not receive this letter.

Eight months later, Pelland received another credit report that included the Ameritech account as well as fifteen other fraudulent accounts. Pelland filed a complaint with the PSC alleging that Ameritech's conduct violated § 502 of the MTA. Pelland's subsequent amended complaint asserted that Ameritech: (1) assessed charges against her without authorization; (2) made false, misleading, or deceptive representations regarding rates, terms, or conditions of providing a telecommunications service; and (3) charged her as an end-user for services she did not order. Pelland sought reimbursement of $2,672 for the unauthorized charges and for her time spent correcting the matter. Pelland also requested that fines be imposed on Ameritech.

Following a hearing, the PSC issued an opinion and order. The PSC concluded that Ameritech violated subsection 502(a) because:

> [the June 11, 1999, and June 15, 1999, letters] represent that [Ameritech] and its agent will do all that is necessary to clear this account with [Pelland's] name and social security number from their records and those of the credit reporting agencies with whom the companies share credit information. The February 2000 credit report indicates that Risk Management was still reporting an account due of $1,022 under [Pelland's] name. Contrary to [Ameritech's] asser-

tions, the Commission finds that, absent evidence supporting its theory that something went awry at the credit reporting agencies after the notice was given, it is fair to infer that [Ameritech] did not take the action that the letters indicated had been accomplished.

The PSC also found Ameritech violated subsection 502(b) by charging Pelland for service she never ordered. Although Ameritech never billed Pelland, the PSC found that the report to the credit agency amounted to a charge for service.

The PSC ordered Ameritech to (1) pay Pelland restitution of $2,825, (2) pay the state of Michigan $40,000 for two noncontinuing violations of subsection a and $2,000 a day for a continuing two-year violation of subsection b,[2] (3) file an application in a new docket seeking approval of procedural changes, and (4) take steps necessary to "ensure that credit reporting agencies remove the negative credit information related to the fraudulent account from [Pelland's] credit reports."

### B. DOCKET NO. 232820

Part of the PSC order required Ameritech to file an application within thirty days for approval of proposed procedures to better protect its customers from the risk of identity theft. Ameritech was ordered to specifically address (1) procedures to verify the identity of persons ordering service, (2) procedures to ensure that accounts referred to collection agencies and credit reporting bureaus are attributed to the responsible parties, (3) record retention policy, (4)

---

[2] The fine totaled $1.5 million.

procedures to remove negative information from a customer's credit report when an account has been determined to be fraudulent, and (5) procedures to timely respond to complaints regarding fraudulent accounts or identity theft. In response, Ameritech filed an application under protest, asserting that the PSC exceeded its statutory authority by essentially governing Ameritech's internal business procedures. The PSC approved the application. Ameritech's appeal is limited to the power of the PSC to regulate these matters, and does not concern the actual procedures proposed or implemented.

## II. STANDARD OF REVIEW

The standard of review and analysis applied to decisions of the PSC is summarized in *Attorney Gen v Pub Service Comm*, 231 Mich App 76, 77-78; 585 NW2d 310 (1998):

> Our review of a PSC order is limited. Pursuant to MCL 462.25 . . . all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Public Service Comm*, 389 Mich 624; 209 NW2d 210 (1973). An aggrieved party bears the burden of proving by clear and convincing evidence that the order appealed is unlawful or unreasonable. MCL 462.26(8) . . . . An order is unlawful if it is based on an erroneous interpretation or application of the law, and it is unreasonable if it is not supported by the evidence. *Associated Truck Lines, Inc v Public Service Comm*, 377 Mich 259; 140 NW2d 515 (1966). A reviewing court must give due deference to the administrative expertise of the PSC and may not substitute its judgment for that of the agency. *City of Marshall v Consumers Power Co (On Remand)*, 206 Mich App 666, 677; 523 NW2d 483 (1994). However, this does not mean that courts may abandon or delegate their

responsibility to interpret statutory language and legislative intent. *Miller Bros v Public Service Comm*, 180 Mich App 227, 232; 446 NW2d 640 (1989).

Whether the PSC exceeded the scope of its authority is a question of law that we review de novo. *Consumers Power Co v Pub Service Comm*, 460 Mich 148, 157; 596 NW2d 126 (1999). Indeed, the PSC possesses only the authority granted to it by the Legislature. The statutes that confer power on the PSC are strictly construed, and this Court does not weigh the economic and public policy factors that underlie the actions taken by the PSC. *Id.* at 156.

### III. SUBJECT-MATTER JURISDICTION

Ameritech first argues that the PSC lacked subject-matter jurisdiction over the complaint filed by Pelland. We disagree.

Subject-matter jurisdiction concerns a body's abstract power to hear a case of the kind or character of the one pending, and is not dependent on the particular facts of the case. *Campbell v St John Hosp*, 434 Mich 608, 613-614; 455 NW2d 695 (1990). Subject-matter jurisdiction is determined only by reference to the allegations listed in the complaint. *Trost v Buckstop Lure Co, Inc*, 249 Mich App 580, 586; 644 NW2d 54 (2002), quoting *Grubb Creek Action Comm v Shiawassee Co Drain Comm'r*, 218 Mich App 665, 668-669; 554 NW2d 612 (1996). If it is apparent from the allegations that the matter alleged is within the class of cases over which the body has power to act, then subject-matter jurisdiction exists. *Id.* Any subsequent error in the proceedings amounts to error in the exercise of jurisdiction. *Id.* The erroneous exer-

cise of jurisdiction does not void a body's jurisdiction, but may be challenged only on direct appeal. Thus, the question before us is not whether the facts of Pelland's case supported a finding of a statutory violation, but whether the class of case was properly before the PSC.

The relevant PSC jurisdiction is provided by the MTA. *In re Complaint of Southfield against Ameritech Michigan*, 235 Mich App 523, 529; 599 NW2d 760 (1999). The Court is not required to look outside the four corners of the MTA to determine the power of the PSC with respect to telecommunications services. *Id.* at 530.

Section 502 of the MTA provides in relevant part:

> (1) A provider of a telecommunication service shall not do any of the following:
>
> (a) Make a statement or representation, including the omission of material information, regarding the rates, terms, or conditions of providing a telecommunication service that is false, misleading, or deceptive.
>
> (b) Charge an end-user for a subscribed service that the end-user did not make an initial affirmative order. Failure to refuse an offered or proposed subscribed service is not an affirmative order for the service. [MCL 484.2502.]

Pelland's amended complaint set forth specific violations of subsections 502(a) and 502(b). Pelland alleged that Ameritech misrepresented rates, terms, or conditions of service, and that it charged her as an end-user for a service she did not order. Considering the character of the pending case, and not the particular facts of the alleged violations, the PSC was authorized by the MTA to determine if Ameritech's actions violated its provisions.

IV. VIOLATION OF MCL 484.2502

Next, Ameritech argues that the PSC erred in finding that it violated subsections 502(a) and 502(b) of the MTA. We agree.

A. SUBSECTION 502(A)

The PSC alleged that Ameritech misrepresented that it would take measures to ensure the correction of Pelland's credit report. The false representations at issue are contained in the June 11, 1999, letter from Ameritech, stating that it would remove the information from its file and suggesting that it would have the information removed from Pelland's credit report.[3] The only evidence supporting a finding of a misrepresentation is the fact that the Ameritech account remained on Pelland's credit report as of February 2000. Three other accounts also remained on complainant's report, although the creditors also informed complainant that they would be removed from her report.

The PSC's finding is based on the assumption that Ameritech had the power to correct complainant's credit report, and on the inference that the Ameritech listing remained on the credit report because Ameritech failed to take action. The Fair Credit Reporting Act (FCRA), 15 USC 1681 *et seq.*, regulates creditors' reports to credit-reporting agencies, and prescribes the actions that must be taken when a customer reports an error in a credit report. Pursuant to the FCRA, Ameritech was required to provide the credit-

---

[3] The PSC improperly considered the June 15, 1999, letter from Risk Management because Pelland never received it.

reporting agency with the correct information, but it was not required to ensure that the incorrect information was removed from the credit report. 15 USC 1681s-2(b). Because the PSC is precluded by federal law from imposing requirements or prohibitions on persons who furnish information to credit bureaus, 15 USC 1681t(b)(1)(F), the PSC could not sanction Ameritech for its report of Pelland's account to the credit bureau or its response to Pelland's notice of the error.

However, despite the preemptive effect of federal law, the PSC could sanction Ameritech if it found that it made a representation that was false, misleading, or deceptive pursuant to MCL 484.2502(a). In this regard, the PSC found that Ameritech represented that it would "do all that was necessary" to have the fraudulent account cleared from Pelland's credit report but failed to do so. This finding was not supported by competent, material, and substantial evidence on the record. Substantial evidence is any evidence that reasonable minds would accept as adequate to support the decision. It is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. *Michigan Ed Ass'n Political Action Comm v Secretary of State*, 241 Mich App 432, 444; 616 NW2d 234 (2000).

The only evidence that Ameritech did not act in accord with its representation to Pelland is the fact that Pelland's credit report remained uncorrected.[4] This presumes that if Ameritech had acted, the report

---

[4] In its brief on appeal, Ameritech provides a significant amount of information regarding unresolved complaints to credit bureaus and their failure to remove incorrect credit report entries. Ameritech asks this Court to take judicial notice of the phenomenon. A judicially noticed fact must be one not subject to reasonable dispute that is either generally known within the jurisdiction of the court or is capable of accurate and

would have been corrected. Yet, neither party presented evidence proving Ameritech's action or inaction regarding Pelland's credit report. Ameritech did not present evidence of its communication with the credit-reporting agency. Pelland did not present evidence of her contact with the agency or its resolution of her complaint. Pelland's testimony showed that other creditors had also assured her that their accounts would be removed; yet they remained on her record as well. This evidence indicates that the problem may rest with the credit-reporting agencies, rather than the creditors. Upon review of the record, the uncorrected report by itself did not establish Ameritech's inaction.

Pelland bore the burden of proof because she was the party who filed the complaint with the PSC. MCL 484.2203(3). She failed to meet that burden. The PSC engaged in unsupported speculation when it found that Ameritech had committed a misrepresentation.

### B. SUBSECTION 502(B)

The PSC also erroneously found that Ameritech charged Pelland as an end-user for a subscribed service that she did not order. Although it does not reference § 502, MCL 484.2505(3)(a) defines an end-user as the retail subscriber of a telecommunications service. Statutes in pari materia are statutes sharing a common purpose or relating to the same subject. They are construed together as one law, regardless of whether they contain any reference to one another. *State Treasurer v Schuster*, 456 Mich 408, 417; 572

---

ready determination. MRE 201. Problems with credit reports do not meet this standard.

NW2d 628 (1998), quoting *Detroit v Michigan Bell Telephone Co*, 374 Mich 543, 558; 132 NW2d 660 (1965). The Legislature elected to use a technical term as opposed to a more general term, such as "person." The Legislature is presumed to be aware of the consequences of the use of language when it enacts laws. *People v Ramsdell*, 230 Mich App 386, 392; 585 NW2d 1 (1998). Technical words and phrases and those that have acquired a peculiar and appropriate meaning in the law are to be construed according to such meaning. MCL 8.3a; *In re Pub Service Comm Determination, No 2*, 204 Mich App 350, 353; 514 NW2d 775 (1994). By using the term "end-user," the Legislature intended to limit the application of subsection 502(b) to existing retail subscribers, and to leave nonsubscribers to other remedies.

Ameritech apparently received an initial affirmative order for the service in question. However, the subscriber ordered the service in Pelland's name rather than her own. Pelland was not the retail subscriber of the service nor was she the end-user. Ameritech did not initiate the contact, and it was defrauded by the action as well. These facts do not support a finding that subsection 502(b) was violated.[5]

### V. AMERITECH'S INTERNAL MANAGEMENT PROCEDURES

Ameritech also argues that the PSC exceeded its authority in ordering it to develop procedures to verify the identity of persons ordering service, ensure that accounts referred to collection agencies and

---

[5] Because of our determination that Ameritech was not in violation of the MTA, we need not address the issues raised in relation to restitution and fines.

credit-reporting bureaus are attributed to the responsible parties, retain records, remove negative information from customers' credit reports when accounts have been determined to be fraudulent, and timely respond to complaints regarding fraudulent accounts and identity theft. We agree.

First, the PSC is barred by 15 USC 1681t(b)(1)(F) from dictating procedures regarding credit reports. Thus, the PSC is precluded from ordering Ameritech to institute procedures to ensure that accounts referred to collection agencies and credit-reporting bureaus are attributed to the responsible party and develop procedures to remove negative information from a customer's credit report when an account is found fraudulent. The matters that are not preempted by federal law are procedures for verifying the identity of persons ordering service, record retention, and timely response to complaints regarding fraudulent accounts or identity theft. We find the MTA does not give the PSC authority to control these matters.

The PSC relies on three statutory provisions as a basis for its actions. Pursuant to MCL 484.2202, the PSC has power to promulgate rules to establish and enforce quality standards for providing telecommunications services. Pursuant to MCL 484.2205, the PSC has authority to investigate and resolve complaints and order changes if the quality, general availability, or conditions for the regulated service violate the act or an order of the commission, or are adverse to the public interest. The PSC may impose penalties pursuant to MCL 484.2601. The PSC's reliance on these provisions is misplaced because the MTA does not give the PSC jurisdiction to address issues of identity theft, collection practices, and credit reporting procedures.

A telecommunications service is not a public utility service. MCL 484.2102(dd). MCL 484.2202(c) empowers the PSC to promulgate rules and issue orders to establish and enforce quality standards for providing telecommunications services. The PSC adopted quality of service rules, 1996 AACS, R 484.61 *et seq.* These rules address demand for service, directory assistance answer times, customer trouble reports, and line transmission requirements. The quality of service rules do not address billing matters.

Other rules establishing billing standards are found in 1996 AACS, R 484.301 *et seq.* None of these rules addresses the matters at issue in this case. Enforcing inchoate "quality standards for providing telecommunications services" does not give the PSC power to regulate all aspects of Ameritech's business. The provision of telecommunications services, like electrical service, is limited to the act of furnishing that particular service to customers. *Consumers Power, supra* at 163. Methods for avoiding fraudulent accounts, collecting debts, and clearing credit reports are management decisions not subject to the PSC's authority. *Union Carbide Corp v Pub Service Comm,* 431 Mich 135, 148-149; 428 NW2d 322 (1988).

Section 205 of the MTA gives the PSC authority to investigate and resolve complaints brought pursuant to the MTA. However, this section is limited to complaints that arise under the MTA, and § 205 does not grant the PSC unlimited jurisdiction to resolve all complaints against Ameritech. If the quality, general availability, or conditions for the regulated service violate the MTA or is adverse to the public interest, the PSC may require changes in how the telecommunications services are provided. The matters implicated in this

case do not concern quality or availability of regulated service. The only possible basis for jurisdiction is if the matters are conditions for the regulated service, and if they are adverse to the public interest.

In *GTE North, Inc v Pub Service Comm*, 215 Mich App 137, 154; 544 NW2d 678 (1996), this Court found that dialing arrangements are conditions for regulated service under subsection 205(2). This Court found that the statute's reference was sufficiently specific and the Legislature was not obligated to specifically enumerate all the conditions for regulated service. The Court has also found that an antislamming provision is a condition that affects how telecommunications services are provided within the meaning of subsection 205(2). *In re Sprint Communications Co Complaint*, 234 Mich App 22; 592 NW2d 825 (1999).

Here, verifying identity, referrals to collection agencies, record retention, credit reports, and response to complaints about fraud are not conditions affecting how telecommunications services are provided. None of these matters has a direct effect on how service is provided. Therefore, the PSC is without jurisdiction to regulate these matters.

Finally, MCL 484.2601 only concerns remedies for violations of the MTA. It does not define a violation, and it does not authorize the remedy ordered by the PSC.

Reversed.